People v. Armer, Case No. 5-13-0314, Council Meeting, April 6th. Good afternoon, Council. Please support Mr. O'Meara. Mr. McHale, I have a statement from the board. You said O'Meara, I didn't have Armer on my paper, so I'm sorry. Oh, okay. So which is it? Armer? Armer. I'm trying to put a fancy pronunciation on that. Put you in the Oscars. Keep that good mood. This is an appeal by the state from an order of the circuit court suppressing evidence of a chemical testing of the defense of a DUI case. The basis of the nutshell of the suppression is this. A recent case from the United States Supreme Court called Missouri v. McNeely, which held that Fourth Amendment applies, even under Missouri's a little bit more stringent applied consent laws, for the involuntary withdrawing of a driver's blood in pursuit of evidence of a DUI case. The court in this case found that the circumstances here were, in parody language that appeared in the McNeely case, an ordinary stop, and there was nothing to distinguish this or to provide for exigent circumstances, apart from the natural dissipation of blood alcohol level due to the passage of time. I need to ask you a question. Yes, Your Honor. Who determines whether there are exigent circumstances? This is a legal question for the court. Based on what? What are we supposed to use? The totality of the circumstances. And how do we get to know what those are? Well, that's going to be based upon the defendant. The defendant will argue correctly that the state has the burden of establishing a set of facts which in their totality of circumstances show exigent circumstances. So it makes no difference that the cop didn't think that there was any exigent circumstances? That was my question. Well, much like all Fourth Amendment considerations, reasonableness is the touchstone of the Fourth Amendment. Reasonableness is always dependent upon an objective view of the facts and the subject of the law. So the fact that the officer in this case didn't articulate what he subjectively saw as exigent circumstances isn't itself the criteria by which the court is to judge whether those exist or not. And he says, I just didn't think I needed to get one. Well, and truth be told, he did. Because at the time, obviously, the officers were operating under a correct interpretation of Illinois law. Illinois implied consent law does say at 635, 625 ILCS 5-11-501.1 A and B that you give consent to a chemical testing at the officer's request and that your inability to withhold that consent, which is the case which we have here, because the defendant was either in a stupor or... And that's not contested, is it? No, no, and I don't want to dwell too much on that because there's no contestation either below or here. I don't understand how you say that he was complying with Illinois law because I would think that you would argue that Schmerber is the applicable law. He's complying with Illinois' consent law. Oh, okay. Implied consent law, I'm sorry. To be specific, there was not a challenge with regards to what he did as far as what Illinois law says by the statute. So all you're saying is you can be passed out and take a blood draw? And you're not considered to have been withheld consent, I guess. That's very unusual. And that was, if you ever get into a case where it discusses the history, there used to be a requirement that you obtain permission, but an actual permission, and that changed over time to essentially withholding consent. And it's a nuance that allows for more liberal use of police, you know, people in the hospital in situations such as those. But are we supposed to take the facts, like he's walking around the scene bloody, and are we supposed to infer from those facts that there were exigent circumstances? No. I mean, all we know is what the police officer is telling us, and that is I followed the law, so I didn't think I needed to do it. Well, let's discuss for a minute exactly what the phrase exigent circumstances and contextually how that applies. In this case, McNeely and Schmermer. I'm standing because I have a back problem. I apologize. I've had three back surgeries, Your Honor. Sorry. I didn't get to tell you all that. It's okay. I apologize. I've been there. Unfortunately. Mine's tomorrow. I pity what you're going through. That's not good if you've got three. I have three spinal fusions on my back. And look, he's up and walking around. And I have a herniated disc awaiting a fourth. We'll talk afterwards. So, yes. Go ahead. I'm sorry. It's okay. The exigent circumstances contextually here is whether or not the officer could bypass the requirement of obtaining a search warrant to draw the blood on the basis of the exigent circumstance, which was first identified in Schmerber, discussed further in Missouri v. McNeely, which is the natural dissipation of the blood alcohol content due to the passage of time. It's generally accepted in Schmerber and McNeely that time will cause the blood alcohol level to drop. In Schmerber, the court characterized it as essentially tantamount to a destruction of evidence. The destruction of evidence is one of those categories of several, which would constitute exigent circumstances. So in Schmerber, where there was an accident that the court had held, at the outset, first of all, whether there's a requirement to obtain a warrant in order to obtain an involuntary blood draw, the answer to that inquiry was yes. The next inquiry was, though, is there an exception to the warrant requirements of which there are many, and one of those is the exigent circumstances. In that case, the court had found that the officer, under those facts, could reasonably ascertain that there were exigent circumstances which would bypass the warrant requirement in order to preserve evidence, being the dissipation of the blood alcohol level of the driver, in that case. Well, okay. If time is a critical factor, what was the time in McNeely? I'm not sure it was ever exactly stated. And the reason for that is this. Twenty-seven minutes. Isn't that about what? What was? I guess it was stated. That's one of the things I wanted to know. I'm not sure. I think it's important. It's about an hour in this case. It's actually probably closer to an hour and a half to the point where we get to the refusal. And the reason I get to that number, and my brief discusses about an hour from the time that the call comes in, and we don't know how much time occurred before that, to the time it gets to the hospital. But if you look at the record, I believe in page appendix three, the sworn report shows a consent time of 115. But there was no consent time. Couldn't have gone from the scene when they took him to the hospital and attempted to get a search warrant then? That's a point that the defendant raises. And I think it's probably important for full disclosure that this is sort of a case of what we have and kind of what we don't have. And that will lead into the defendant's assertion of the waiver argument here, or the forfeiture. And I don't want to mix these two things up. But to answer your question specifically, I don't really know, and there wasn't really any testimony with regards to what the role was of this other officer. The officer in this case, who shot you across in the evening, you may remember from this morning. We do. There was also the officer in this case, and he was the one who was essentially, I think, the point man from the time of the initial call and investigation. Like Mayberry, there's only one. I know. I know. But, you know, I can see if the deputy would have come in and said, look, he was bleeding, he was unconscious, they were putting an IV in his arm, they were going to put, you know, a thousand units. And we had to have it before they did that. I could see that. And I could probably envision that that was going to happen. But when the officer says, no, I just didn't think I needed one, that makes it a little harder. I understand that, Your Honor. But, again, I think the fact that he says he didn't need one was the correct, correctly ascertaining that Illinois doesn't require it specifically. You know, officers are not lawyers. They're trained by way of this is what the statute says and this is what you can do. And if you have an accident and you're at the hospital and you're allowed to ask for a chemical choice of the officer's choice, in this case being the blood, which makes sense because he's in the hospital, at the hospital already, and if he doesn't refuse or withhold consent, then you can then direct the hospital personnel, as long as you comply with other parts of the statute, to do a valid blood draw kit for DUI alcohol testing later on. So I would emphasize you have to put a lot of emphasis on what the officer says or the thing that he needed to do or to do because he's not a lawyer. And I don't mean to be flippant about it, that I'm in a great shape. But it's a different thing that the judge looks at than from what an officer is trained to do. And it's doubtful that at this point, given particularly the newness of this Missouri v. McNeely case, that the old concept of it is sort of filtered in to the authority's process of thinking about what he's required to look for or whether he needs to present an exigent circumstance. I understand it takes back to Schmerber. So I'm not saying that that old concept of exigent circumstances arises for the first time in 2012 or 13 with McNeely. What I am saying, though, is that it becomes a more finely tuned point with McNeely because what McNeely says, and I also want to emphasize this point, the only one argument that McNeely sort of took and decided was in response to the state's position that all cases involving DUIs are exigent circumstances because in all cases, there's going to be dissipation of the blood, of the alcohol in the blood. Wow. If you have a question, please. Are you saying McNeely says that in all cases there's exigent circumstances? It says the opposite. Right. That's what I thought. It says that. It's always a case-by-case determination. Okay. And if I could, one quick follow-up. We'll have time. All right. Thank you very much. Thank you. Well, we helped you out, didn't we? May it please the Court? Counselor? My name is Lawrence O'Neill from the Office of the State Appellate Defender, and I represent Mr. Armour in this cause. I ask this Court to affirm the judgment of the circuit court of granting Mr. Armour's motion to suppress evidence from the warrantless blood draw search. The compulsory withdrawal of blood is a search under the Fourth Amendment implicating serious constitutionally protected privacy interests. Here the State asks this Court to find that the blood draw was lawful under the exigent circumstances exception to the Fourth Amendment's warrant requirement. The State bears the burden of proving exigent circumstances in these cases. To establish exigent circumstances in these compulsory blood draw cases, DUI cases, the State is required to prove that the officer was faced with an emergency situation in which the delay to obtain a warrant might have allowed for the destruction of the evidence by the natural dissipation of the blood alcohol level. However, as the United States, as the Pele Court stated, where the officer could reasonably obtain a warrant before undermining the efficacy of the blood alcohol level, the Fourth Amendment mandates it. Here the circuit court makes specific factual finding on this issue after hearing evidence of the suppression here. The court specifically found, quote, the arresting officer was not faced with an emergency that justified acting without a warrant. To reverse the judgment of the circuit court, your honors would have to find that the circuit judge's determination was against the manifest weight of the evidence. A major problem that the State has here is the record is lacking in evidence of exigent circumstances because the prosecutor below did not argue that the blood draw was justified as an exigent circumstance and the arresting officer did not order the blood draw while believing that it was necessary to preserve the blood alcohol level. Let me ask you the same question. What do you think this court should rely on? Can we rely on the fact that the officer's report says that he's got somebody who's obviously bleeding walking around? Can we take that into account? Here's a man who needs medical attention. He's taken by an ambulance to a hospital. We know he's going to get treatment. And the reason I'm asking the question is because in Schmerber, the court seems to make an inference where they say the arresting officer might reasonably have believed that he was confronted with an emergency. There's no testimony of the officer in that case. That's correct. So that's why I'm kind of asking the question. Can we infer from the facts? What you can infer from Schmerber and McNeely is that the state has the burden to prove the exigent circumstances and the natural dissipation of the blood alcohol level and the delay to transport a DUI suspect to the hospital do not in themselves create exigent circumstances. No, but in McNeely it was obvious that they just took him to the hospital to get the blood draw because they refused the test at the scene. There wasn't any injury is the way I understand it. That's correct. But McNeely court also went on to state that the time delay with the natural dissipation is not the exigent circumstances in itself in that the officer could, the time delay is involved in all these DUI related cases where an officer typically has to transport the suspect to a medical facility to obtain the assistance. I thought an emergency vehicle was, who called the emergency vehicle? Was that the officer? I believe so, Your Honor. And so he was transported by, I don't think the police transferred him. No, he took an ambulance. He took an ambulance. An ambulance. That's what I'm saying. I got confused by what you said. Your Honor, I meant simply that there's a delay in transporting both when the suspect is taken away in an ambulance and when the suspect is taken by the police officer in a routine case like this. With a non-accident type. Correct. So, therefore, cases involving injury and transportation in an ambulance are no different than a routine DUI case like McNeely in the sense that both cases involve a time delay. That is to transport the suspect to the hospital for the blood draw. Now, do you think that the court should not take into consideration the time of day? I think that... Four o'clock in the morning, is that okay? Your Honor, in many of these instances, the judge is on call and available. The important point here is that the officer took no steps to see if the judge was available. Well, now, who makes that a search warrant? I always thought the prosecutor did. Well, Your Honor, the police officer would have to call the prosecutor, period. But, again, the officer did nothing here to do that. Now, does the type of county or anything have anything to do with that? There are no cases that show. Your Honor, sure, Your Honor. Those are all part of the totality of the circumstances. It's just time of day, a prosecutor available, and a judge available. That's... Well, we don't know. The state didn't establish that a judge wasn't available here. Maybe a judge was on call. The hospital and the state's... Within a mile and a half of each other. It's possible that the officers on the way from the accident scene to the hospital drove right past the resident judge's house. The judge was the defender in this case, wasn't he? He's now the public defender. Is that right? I'm not sure about that. But I know there was testimony from the officer that the resident judge at the time of this accident's house was located close to the state's attorney's house. Do you want an invocation or anything? No. That goes to, you know, the state. That goes to the argument on the state. Because time delay and natural dissipation do not in themselves create exigent circumstances. The state has to prove that there were other additional facts involved that prevented the officer from obtaining a warrant. Again, the verdict is on the state. That's exactly what I'm asking you. The fact that they put in a report and the guy's bloody, testifies he's bloody. Can we infer from that that he's going to get treatment? I doubt he fell asleep. More like he was either drunk and passed out or injured to the extent. Do they have to put on all that injury testimony? They would have to put on that that was a factor that prevented the officer from obtaining a warrant before the natural dissipation of the blood loss. So that's my question. You think that has to be affirmatively set forth and that we shouldn't infer that? You should not infer that. And moreover, the state has the burden to show that. The state has the burden to show that the officer could not reasonably have obtained a warrant. Well, in the facts of the situation you're describing, perhaps there was a reasonable fact that prevented the officer from getting a warrant for the blood alcohol dissipation. But we don't have that in this record. Well, no, and for those of us who know where this happened, it's a very small town. I mean, easy, not like you're in Chicago. Correct. In the McNeely court, it projected a per se rule. And again, it would not be the totality of the circumstances. And in doing so, the McNeely court referred to that there could be factual situations in which the time to obtaining a warrant would not significantly delay the blood draw in situations such as we have here with two officers on the scene. And the record indicates that both officers stayed on the scene for what could be 35 minutes or so. None of the officers left to begin to take steps to secure the warrant. The McNeely court specifically mentioned that as one of the numerous factual variations under these kind of circumstances where the officer could reasonably obtain a warrant before the blood draw. Here, there is no explanation in the record as to why both officers were needed at the scene. The important point is that the natural dissipation of alcohol and the delay in transporting do not in themselves establish evidence in circumstances. The state has to prove that the officer took reasonable steps to attempt to secure the warrant. And the state failed in its burden to do that here. And the judge made a factual determination specifically finding that the officer was not confronted with an emergency that justified acting without a warrant. Again, the McNeely court rejected a per se rule that didn't go into what effects specifically would amount to creating evidence in circumstances. It mentioned, though, the officer, two officers at the scene. It also mentioned the advancement in technological means and of processing warrants more quickly. And here, we don't even have the officers calling ahead or radioing ahead. We just have them staying at the scene, wasting all that time. Well, they were probably driving in traffic. That's not in the record. It's not in the record? No, no. Thank you. Justice Case, I'm going to go back to this inference topic again because it's a very interesting one. Now, what we do have in this case is the officers are called at the scene of an accident. When they arrived, the vehicle rolled over. The driver was the only person we've seen walking around dazed and bloody, I believe, was the characterization given. Certainly, it's not, I don't think, beyond that too much to at least infer that he had been in what would be ostensibly a fairly serious accident. He's obviously ambulatory. He's able to walk around, but we don't know if he has a head injury or something like that. Well, the vehicle rolled over, didn't it? Correct. But the other factor I wanted to bring in was this. It also sort of raises the question of how far can the state go to bring out the specific types of injuries that the defendant suffered, apart from what the police officer can, as a lay officer, if you will, not a medical professional, testify to. If you go beyond that, then we start to tread into some HIPAA issues, I believe, because it's the state that's the one bringing the issue here, the medical condition of the driver. But that's on your standard reports, the medical condition. Nobody's asking you to say whether he had lactated ringers versus normal saline. I certainly understand that, Your Honor, but the point is where do you draw the line? And that's sort of the repost, if you will, is that we could say that how far can we infer? I'm not sure the inference has to go much beyond the fact that there was a situation presented to an officer confronted with a vehicle accident in an obviously injured individual that's going to require medical attention, that's going to require transport to a hospital, that's going to require treatment once at the hospital for whatever it is of this particular individual. But it seems easy for me to say to the prosecutor, okay, there's a motion pending. You're going to ask the questions. You're going to get your police officer ready, and you're going to say, when you arrived at the scene, what did you see? And he's going to say, this guy walking around dazed, bloody. Did you get an ambulance? Yes. Were they preparing to treat him at the hospital? Yes. Did you think the treatment might impact the blood alcohol? Yes. Is that why you didn't get a warrant? Yes. In this case, we have none of that. Well, we have actually a lot of that. That's exactly what the officer testified to. He got to the scene, he observed him, he was in the car with him. But that's what I'm saying is, all he said is, I didn't think I had to. He said he didn't think he had to get a warrant is what he said. Right, right. Okay. And that's why I keep asking, what are we to infer? We're supposed to ignore the fact that he didn't think he needed one and just look at what a reasonable person would have thought. That's exactly correct. That's the standard you want us to use? Yes, yes. The totality of circumstances is evaluated on an objective assessment of the facts. If they don't confront a reasonable person, that what this particular officer saw was or was not in the quantum of facts constituting a... I just thought the officer ought to be reasonable. And to the extent you're not disagreeing, I don't want to nitpick, but the question of whether you think this test would have affected the alcohol is something else altogether. It's the accuracy of the result. But as far as, I mean, I understand and I do think that you, and part of the whole nexus of facts with regards to exigency, there has to be an accident. Now, Schmerber obviously, as the court pointed out, didn't really get into that because it saw that a reasonable officer in an accident sees that the paramount duty of the officer is to protect the health and life of the driver, not to obtain DUI. I think Justice Chapman hit the nail on the head, though, is the question I was asking, is you want us to ignore the internal beliefs of the deputy and really... Ignore, yes, because they're immaterial. Right. They are. And that's been the standard in all facets of Fourth Amendment jurisprudence. It's not what this officer thought, but what would the reasonable person believe under these circumstances. If the reasonable person, if this court can come to that conclusion, it doesn't really matter what the officer said. And I think that the fact that both the defendant and the court relied upon that is a bit of a hitch. I'm not saying it's the reason why the court should be, necessarily found to be incorrect in the situation. But the question always comes up in Fourth Amendment cases. It's always answered, and the defendant's always seized upon it, and the case law has consistently said, so what? Because that's not the Fourth Amendment standard. It's the reasonable person standard. And that's the only way to do it because people's objective view, subjective view of things are always going to be different than the objective legal standard. That's the only way you maintain the uniform body of precedent. But you think the court relied on the officer's perspective as opposed to... It's not so much a belief as an articulation. I could just finish doing the court's report where... I thought I saw this in here. Okay, page 87. The officer made no attempt to secure a search warrant because he believed that one was not necessary. So obviously the court took into consideration that aspect of the testimony. Thank you, counsel. Thank you, counsel. The case will take under advisement to receive an order in due course. The court is adjourned until 9 o'clock tomorrow morning.